VALKYRIE LAW GROUP, P.C.
HEATHER L. BLAISE, ESQ. (SBN 261619)
1 N. State Street, Suite 1500
Chicago, IL 60602
Telephone: 312-448-6602
Email: hblaise@valklaw.com

Attorneys for Plaintiff,
COLETTE MILLER

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| COLETTE MILLER, an individual,<br><br>Plaintiff,<br>v.<br><br>WINGSTOP, INC., a Delaware corporation,<br><br>Defendant. | CASE NO: ______________________<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND TRADE DRESS INFRINGEMENT UNDER THE LANHAM ACT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff COLETTE MILLER ("Plaintiff," "Miller"), an individual, by and through her attorneys, Valkyrie Law Group, P.C., as and for her Complaint for Copyright Infringement and Trade Dress Infringement under the Lanham Act ("Complaint") against Defendant WINGSTOP, INC., a Delaware corporation, ("Defendant"), alleges as follows:

## <u>NATURE OF THE ACTION</u>

1. This lawsuit concerns Defendant's willful, brazen, and extensive unlawful infringement of Plaintiff's exclusive copyright in works of fine art entitled Melrose Wings (the "Original Work"), which was created by the Plaintiff, Colette Miller, in relation to her trademarked *Global Angel Wings Project*. That Miller's beautiful and highly distinctive artwork is being used by Defendant to promote the sale of heavily

processed chicken wings (the "Product"), is both an egregious violation of federal law and an affront to Miller, her livelihood, her legacy, and to artists everywhere.

2. Miller is the owner of the United States Trademark for Global Angel Wings Project under Serial Number 87168985 (the "Mark"), which was registered on November 28, 2017 under International Classification 16 for Murals.

3. In connection with Plaintiff's commercial exploitation of the Mark, Colette Miller has painted her wings in North America, US, Canada, Mexico, Kenya, China, Japan, Taiwan, Malaysia, England, France, Spain, Italy, Germany, Ukraine, Moscow, Turkey, Dubai, Australia, Cuba, Brazil, etc. She has also licensed her wings for apparel, fabrics, prints, pool floaties, nail polish, pet collars, scarves, pillows, bags, pins, jewelry, video games, assorted gift merchandise at the Burj Kalifa and stained glass, etc. She has worked with entities such as UNICEF, LA Tourism (in China and Australia), American Airlines, Pancreatic Cancer Society, Kimpton Hotels, The Grammy Museum, Ritz Carlton, Shanghai Arshang Museum, LA Dodgers, Lyft, SOMarts Cultural Center, General Motors, Viceroy Hotels, TEDx, Four Seasons, Harmony for Hope, Barilla, Project Angel Food, Hotel Indigo, Yale University, Hotel Amara Istanbul and numerous real estate developers.

4. As a result of her *Global Angel Wings Project*, feathered angel wings painted as a mural in human proportion on public spaces has become Plaintiff's calling card and her trade dress. In fact, members of the consuming public routinely call the distinctive murals, Plaintiff's "Wings."

5. Without the consent of Plaintiff, and without her knowledge, Defendant infringed upon her rights by commissioning artists to imitate the Original Work to promote the Product (the "Infringing Reproductions") and then tagged the Original Work with a QR Code (the "Code"), thereby both using the Original Work to promote their own brand and defacing the Original Work for which Plaintiff and her *Global Angel Wings Project* has become synonymous.

6. Below, left, is the Original Work, Melrose Wings. Below, right, is a still

image of one of the Infringing Reproductions. As set forth more fully below, each of the Infringing Reproductions intentionally copies the Original Work and Plaintiff's trade dress and is a blatant attempt to appropriate many of the specific copyrightable elements in the Original Work, including stylized motifs of life-sized feathered angel wings on an exterior building, from a straight on perspective to encourage humans to be photographed to mimic an angel spreading its wings. The height, scale, and overall impression of the Infringing Work is substantially similar to the Original Work.






7. Defendant defaced the public sidewalk adjacent to the Original Work with a QR code linking to their online advertising campaign, along with the phrases "THOSE WINGS NEED RANCH" and "SCAN TO JOIN THE CLUB AND GET 5 FREE WINGS" (the "Sidewalk Advertisement") in a transparent attempt to link their Product to the Original Work.






8. Defendant's exploitation of Plaintiff's Original Work is particularly

troubling for several reasons.

9. The entire theme of the Infringing Reproductions is premised on Plaintiff's Global Angel Wings Project in that Defendant hired artists to create murals substantially similar to the Original Work and evoking Plaintiff's trade dress embodied in wall mural angel wings and to link their own Product to the Original Work through the Sidewalk Advertisement.

10. The artwork in the scene in the Infringing Reproductions is so clearly a copy of Plaintiff's work that even before the infringement became known, the advertising trade periodical Ad Age attributed the style of Defendant's so-called "Flavor Wings" campaign to Plaintiff's Original Work.

11. Furthermore, Defendant's infringing "Flavor Wings" campaign was directed to consumers in Los Angeles, California, where Plaintiff resides.

12. Plaintiff is a serious professional whose work hangs in private collections, galleries, public spaces and museums and her career depends upon the respect and admiration of consumers of art, dealers, collectors and critics of contemporary art. By the forced and unauthorized association of her work with the Infringing Imitations, the Sidewalk Advertisement, and the Product, the integrity of her work and her reputation as an artist has been damaged.

13. Accordingly, as set forth more fully below, the Plaintiff seeks damages and equitable relief for direct, contributory and vicarious copyright infringement, arising from the creation and unlawful use of a substantially similar copy of her Original Work in violation of the United States Copyright Act, 17 U.S.C. § 101 et seq. (the "Copyright Act").

14. Additionally, as set forth more fully below, Plaintiff seeks, a permanent injunction pursuant to 15 USCS § 1116, enjoining and restraining defendant and its officers, directors, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from using Plaintiff's trade dress or any trade dress that is confusingly similar to plaintiff's trade dress; for an order directing Defendant(s)

to recall all products, packaging, and promotional materials bearing the infringing trade dress; an award of Defendant's profits derived from its infringing activities pursuant to 15 USCS § 1117; an award of all damages sustained by Plaintiff as a result of Defendant's infringing activities pursuant to 15 USCS § 1117; an enhancement of the award of profits and/or damages pursuant to 15 USCS § 1117, as the Court finds appropriate due to the willful nature of Defendant's infringement; and an award of Plaintiff's reasonable attorneys' fees and costs pursuant to 15 USCS § 1117 under the Lanham Act. 15 U.S.C. § 1051 et seq.

## PARTIES, JURISDICTION, AND VENUE

15. Plaintiff COLETTE MILLER is a United States citizen with a residence, art studio and private exhibition space in Los Angeles, California and Richmond Virginia. Her work has been exhibited in California and internationally in commercial galleries and non-profit institutions.

16. Defendant WINGSTOP, INC., is a foreign corporation organized and existing under the laws of Delaware, with its headquarters located at 2801 N. Central Expressway, Dallas, Texas 75204.

17. At all relevant times, Defendant has conducted substantial business in the State of California, including but not limited to the distribution, marketing, and sale of fast food chicken products, and maintains affiliates or subsidiaries within this Judicial District.

18. This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. § 501 (copyright infringement), 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1338(a) (acts of Congress relating to copyrights), and 15 USCS § 1121, as this is a civil action arising under the Lanham Act, a federal trademark statute.

19. This Court has personal jurisdiction over the Defendant because Defendant regularly transacts or solicits business in California, has committed a tortious act in California, or has committed a tortious act that has caused damage to the

Plaintiff in this state.

20. Venue is appropriate in this district pursuant to 28 U.S.C. §§ 1391(a)-(b) and 28 U.S.C. § 1400(a).

21. This Court has personal jurisdiction over Defendant in that, among other things, Defendant does business in this Judicial District, and Plaintiff does business and is suffering harm in this Judicial District.

## FACTS RELEVANT TO ALL COUNTS

### A. Plaintiff and the Original Work

22. Plaintiff is a United States citizen and lives and works in Los Angeles.

23. Plaintiff's work consists of paintings, works on paper, sculpture, photography, performance art, and installations. Her work is critically acclaimed and resides in a number of high-profile collections and galleries. She has also licensed her wings to dozens of films, television shows and media outlets including Hollywood Teen medium, Growing Up Top Model, Cobra Kai, I Want My Phone Back, BUZZFEED, Refinery 29, Orion Beer commercial (Japan), Invisalign M2M Wildness, Hop Skip Jump, GHOSTING, AHA Film and Committee for a Better LA, We are the Los Angeles Busy Tonight Show – Turbo Productions, Artist Spotlight LA BB&T (Saville Productions), IF ONLY, New Wave Entertainment–ZOO, Angels Friends photography license, Hangzou China, EYLA interior work space LA, LAMF "Summertime," Venus as a Boy, Full Bloom, Blue Orbit, To Tell The Truth, Random ACT of Magic, Street Art Stories, As the Cookie Crumbles, Sela Films The Program (untitled project, Wings on Macys DTLA), A&E Network Angel tv series, The Rookie (Arts District "Coop Wings", Ford Auto commercial, American Songs – Prospect Productions, EFT Media Evolution, Media Housewives, Abby List film – Hermosa Beach, Mullen Lowe Media Hub – El Segundo, NETFLIX Happy Place, Ndeska X Brent Faiyez interview, Light Switch – film HARD SUMMER, International Love tv show, Delerium TV, Dress My Tour tv – Bright Roads Productions, New Remote Productions/Viacom CBS, Killer Queen Wine Bar wings mural – SCRIPPS Network

LLC, Pie Town TV, Ohio Singles Project/Paramount/Delerium TV, Dena Strong, Alta Dena, Black Eyed Peas Video (Alta Dena Fire Relief), Airports: Heathrow London, LAX, O'Hare Chicago and Liberty Newark.

24. The Original Work was part of the *Global Angel Wings Project* (the "Project"), created by Plaintiff in 2012, in the streets of Los Angeles, the City of Angels, and from part of an ongoing series of related artwork. The Project's mission statement states the wings "were painted to remind humanity that We are the Angels of this Earth. They are human sized interactive public art, wings that people take photos with and thus become part of the artwork." *Mission Statement*, THE ORIGINAL GLOBAL ANGEL WINGS PROJECT CREATED 2012 (Dec. 23, 2023) https://globalangelwingsproject.com/home/f/mission-statement (last visited Sept. 22, 2026); *see also* **Exhibit A**, Plaintiff's Instagram Posts, attached hereto.

25. The *Global Angel Wings Project* is also a registered trademark owned by Plaintiff.

26. Plaintiff's Project contains a unique combination of expressive features, including: vibrant, layered brushstrokes producing a textured, feathered effect; symmetrical but intentionally imperfect wing shapes that emphasize organic authenticity; a distinctive color palette typically incorporating vivid blues, reds, purples, greens, yellows, and iridescent highlights; human-scale placement that aligns the wings precisely with the average viewer's height; a format designed for active viewer participation intended for individuals to stand before the wings, visually "completing" the artwork.

27. Each set of angel wings is a mural executed by applying acrylic paint or acrylic-painted paper to the wall before adding additional details.

28. Plaintiff has been engaged to paint her "Wings" as part of the Project all over the world, in countries such as Kenya, Australia, England, Japan, France, Cuba, Mexico, Dubai, Taiwan, as well as multiple locations within the United States.

29. Plaintiff's Original Work and the Project have been continuously featured

and illustrated on the Plaintiff's webpages at https://colettemiller.com/ and https://colettemiller.com/global-angel-wings-project since at least September 2016, and via Plaintiff's Instagram account, @colettemillerwings, with posts of works of the Project painted around the world since December 2013.

30. During and as a result of the above-referenced exhibitions, the Original Work and the Project were widely covered and praised in the U.S. and foreign press.

31. On July 10, 2019, the U.S. Copyright Office issued a copyright registration for the Original Work, Melrose Wings, as Registration No. VA 2-169-006. *See* **Exhibit B**, Copyright Registration, attached hereto.

32. The Original Work is an original work of authorship, fixed in a tangible medium of expression, containing substantial amounts of Plaintiff's original creativity, and are therefore copyrightable works under the Copyright Act.

**B. The Infringing Reproductions**

33. On or before July 1, 2026, Defendant commissioned or caused to be commissioned mural artists to create the Infringing Reproductions.

34. At least five (5) Infringing Reproductions were installed throughout the Los Angeles area on or around July 1, 2026. *See* **Exhibit C**, Wingstop Murals, attached hereto.

35. The Infringing Reproductions were part of a campaign titled "Flavor Wings" meant to advertise the Product.

36. The Infringing Reproductions were a blatant imitation of a prior advertising campaign that was actually licensed and endorsed by Plaintiff.

37. The licensed campaign with Postmates was an authorized derivative work of the Original Work (left), as a single mural of fried chicken wings inspired by Plaintiff's Project as it was of similar proportion to Plaintiff's life-sized feathered angel wings on an exterior building, and to encourage humans to be photographed in front of the mural to mimic an angel spreading its wings, with the tagline "This Angel Got Wings on Postmates" (right, the "Authorized Derivative Work").

 


38. Defendant defaced the public sidewalk adjacent to the Authorized Derivative Work with a QR code linking to their online advertising campaign, along with the phrase "NICE WINGS WANT FIVE MORE?" and inviting a commercial transaction with the QR code (the "Second Sidewalk Advertisement") in a transparent attempt to link their Product to the Authorized Derivative Work.

39. Plaintiff was alerted to the misuse of the Original Work in the Infringing Reproductions by acquaintances and members of the consuming public who were surprised to see what they assumed to be her willing participation.

40. Plaintiff, through her counsel, promptly contacted Defendant to object strongly to the unauthorized copying and display of her Original Work.

41. To date, the Infringing Reproductions and the Sidewalk Advertisement continue to exist.

42. Plaintiff has suffered, and continues to suffer, from the infringing activities of the Defendant, including without limitation from Defendant's usurping of Plaintiff's right to control the publication and commercial use of the Original Work, Defendant's failure to pay any license fees commensurate with the value of their promotional use of the Original Work and/or its unauthorized copies, Defendant's failure to account for or disgorge the profits directly and indirectly attributable to their misconduct, and Defendant's failure to mitigate damages by withdrawing the Infringing Reproductions and Sidewalk Advertisement from public view.

43. In addition, Defendant's actions have caused significant harm to Plaintiff and the Original Work, thereby significantly damaging the value of the Original Work, all of the Plaintiff's other works, and the value of any licenses for her artworks in the relevant markets.

**COUNT I**

**DIRECT COPYRIGHT INFRINGEMENT**

**The Infringing Reproductions**

44. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45. The acts of the Defendant constitute infringement of Plaintiff's copyright and exclusive rights under copyright in the Original Work in violation of the Copyright Act, 17 U.S.C. § 106.

46. Upon information and belief, the foregoing acts of infringement by Defendant have been willful, intentional, and purposeful, in disregard of and indifference to Plaintiff's rights.

47. Each separate mural of the Infringing Reproductions commissioned by Plaintiff represents a separate infringement of the Original Work.

48. The infringement of Plaintiff's rights in the Original Work constitutes a separate and distinct act of infringement.

49. As a direct and proximate result of Defendant's foregoing acts, the Plaintiff is entitled to actual damages and disgorgement of Defendant's profits attributable to the infringement, pursuant to 17 U.S.C. § 504.

50. Unless and until the Defendant's ongoing conduct with respect to the Infringing Reproductions is enjoined by this Court, such conduct will continue to cause irreparable injury to Plaintiff's legacy and the integrity of the Original Work that cannot fully be compensated for or measured in money, and Plaintiff is accordingly also entitled to an injunction pursuant to 17 U.S.C. § 502, prohibiting further infringement of her exclusive rights under copyright.

## COUNT II

## UNFAIR COMPETITION AND FALSE ENDORSEMENT

### The Sidewalk Advertisements

51. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 43 of this Complaint as if fully set forth herein.

52. The acts of the Defendant constitute dilution of Plaintiff's mark and exclusive rights in violation Section 43(A) of the Lanham Act, 15 USC § 1125(A).

53. Plaintiff has continuously and extensively used this trade dress in commerce since 2012.

54. Plaintiff has invested substantial resources in developing, promoting, and advertising her trade dress.

55. Through Plaintiff's extensive use and promotion, Plaintiff's trade dress has acquired secondary meaning, such that consumers have come to associate the trade dress with Plaintiff as the source of the goods.

56. Plaintiff's trade dress is primarily non-functional, as it is not essential to the use or purpose of Plaintiff's products and does not affect the cost or quality of the products.

57. Since July 2026 to the date of this Complaint, Defendant has advertised and marketed its Product using Plaintiff's Original Work and the Authorized Derivative Work (collectively, the "Works"), and Plaintiff's trade dress, by defacing the works with the Sidewalk Advertisement and the Second Sidewalk Advertisement (collectively, the "Sidewalk Advertisements").

58. The Sidewalk Advertisements, taken in conjunction with the QR code which linked to images of the Infringing Reproductions, falsely implied that Plaintiff sponsored, approved, and/or endorsed Defendant or Defendant's Product.

59. Defendant, by its intentional and unauthorized appropriation and use of Plaintiff's trade dress and the Works have engaged, and is continuing to engage, in acts of wrongful deception of the public, with the effect of confusing consumers into

believing Defendant is legitimately connected and/or affiliated with, or sponsored, approved, and/or endorsed by Plaintiff, along with wrongful deprivation of Plaintiff's good name and reputation.

60. Defendant's Sidewalk Advertisements and their links to the Infringing Reproductions constitutes a false designation or origin, false or misleading description of fact, or false and misleading representation of fact, which is likely to cause confusion, mistake, or to deceive as to the endorsement, affiliation, connection, or association of Defendant with Plaintiff.

61. The foregoing acts of infringement by Defendant have been knowing, intentional, and purposeful, in disregard of and indifference to Plaintiff's rights.

62. The infringement of Plaintiff's rights in the Original Work constitutes a separate and distinct act of infringement.

63. The infringement of Plaintiff's rights in the Authorized Derivative Work constitutes a separate and distinct act of infringement.

64. As a direct and proximate result of Defendant's foregoing acts, the Plaintiff is entitled to actual damages and disgorgement of the Defendant's profits attributable to the infringement, pursuant to 17 U.S.C. § 504.

65. Unless and until the Defendant's ongoing conduct with respect to the Infringing Reproductions is enjoined by this Court, such conduct will continue to cause irreparable injury to Plaintiff's legacy and the integrity of the Works that cannot fully be compensated for or measured in money, and Plaintiff is accordingly also entitled to an injunction pursuant to 17 U.S.C. § 502, prohibiting further infringement of her exclusive rights under copyright.

## <u>COUNT III</u>

## VICARIOUS COPYRIGHT INFRINGEMENT

### The Infringing Reproductions

66. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 43 of this Complaint as if fully set forth herein.

67. The acts of Defendant constitute vicarious infringements of Plaintiff's copyright and exclusive rights under copyright in the Original Work in violation of the Copyright Act, 17 U.S.C. § 106.

68. Upon information and belief, the foregoing acts of vicarious infringement by Defendant have been willful, intentional, and purposeful, in disregard of and indifference to Plaintiff's rights.

69. The infringement of the Plaintiff's rights in each of the Original Works constitutes a separate and distinct act of infringement.

70. As a direct and proximate result of Defendant's foregoing acts, Plaintiff is entitled to actual damages and disgorgement of the Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504.

71. Unless and until the Defendant's ongoing conduct with respect to the Infringing Reproductions is enjoined by this Court, such conduct will continue to cause irreparable injury to the Plaintiff's legacy and the integrity of the Original Work that cannot fully be compensated for or measured in money, and Plaintiff is accordingly also entitled to an injunction pursuant to 17 U.S.C. § 502, prohibiting further infringement of her exclusive rights under copyright.

## COUNT IV

## CONTRIBUTORY COPYRIGHT INFRINGEMENT

### The Infringing Reproductions

72. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 43 of this Complaint as if fully set forth herein.

73. The acts of Defendant constitute contributory infringements of Plaintiff's copyright and exclusive rights under copyright in the Original Work in violation of the Copyright Act, 17 U.S.C. § 106.

74. Upon information and belief, the foregoing acts of contributory infringement by Defendant have been willful, intentional, and purposeful, in disregard of and indifference to Plaintiff's rights.

75. The infringement of Plaintiff's rights in the Original Work constitutes a separate and distinct act of infringement.

76. As a direct and proximate result of Defendant's foregoing acts, Plaintiff is entitled to actual damages and disgorgement of the Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504.

77. Unless and until the Defendant's ongoing conduct with respect to the Infringing Reproductions is enjoined by this Court, such conduct will continue to cause irreparable injury to Plaintiff's legacy and the integrity of the Original Work that cannot fully be compensated for or measured in money, and Plaintiff is accordingly also entitled to an injunction pursuant to 17 U.S.C. § 502, prohibiting further infringement of her exclusive rights under copyright.

## COUNT V

## TRADE DRESS INFRINGEMENT IN VIOLATION OF 15 USCS § 1125

### The Infringing Reproductions

78. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

79. Plaintiff is the owner of distinctive trade dress consisting of feathered angel wings painted as a mural in human proportion on public spaces, in vivid colors with a white highlight, and each set of angel wings is executed by applying acrylic paint or acrylic-painted paper to the wall before adding additional details. *See* Exhibit A.

80. Plaintiff has continuously and extensively used this trade dress in commerce since 2012.

81. Plaintiff has invested substantial resources in developing, promoting, and advertising her trade dress.

82. Through Plaintiff's extensive use and promotion, Plaintiff's trade dress has acquired secondary meaning, such that consumers have come to associate the trade dress with Plaintiff as the source of the goods.

83. Plaintiff's trade dress is primarily non-functional, as it is not essential to the use or purpose of plaintiff's products and does not affect the cost or quality of the products.

84. Defendant began advertising the Product bearing trade dress that is confusingly similar to Plaintiff's trade dress on or about July 1, 2026.

85. Defendant's trade dress consists of stylized motifs of life-sized angel wings on an exterior building, from a straight on perspective to encourage humans to be photographed to mimic an angel spreading its wings. The height, scale, and overall impression of the Infringing Reproductions are substantially similar to the Original Work. *See* Exhibit C.

86. Defendant's trade dress is confusingly similar to Plaintiff's trade dress in appearance, impression, and overall look and feel.

87. Defendant's use of the confusingly similar trade dress is likely to cause confusion, mistake, or deception among consumers as to the source, sponsorship, or approval of Defendant's Product.

88. Plaintiff received communications following the releases of the Infringing Reproductions demonstrating actual confusion about Plaintiff's and her Project's apparent association with Defendant and the Product, for instance:



89. Defendant's actions have caused and continue to cause irreparable harm to Plaintiff, including damage to Plaintiff's reputation and goodwill.

90. Defendant's actions have resulted in actual damages to Plaintiff, including lost sales and profits.

91. Plaintiff owns protectable trade dress.

92. Plaintiff's trade dress consists of feathered angel wings painted as a mural in human proportion in public, accessible spaces such as streets, alleys, and urban walls, as layered brushstrokes in vibrant colors with a white highlight, and a hand-crafted, organic look, and each set of angel wings is executed by applying acrylic paint or acrylic-painted paper to the wall before adding additional details; the wings are meant to be stood in front of so viewers become the "angel" and the art is completed by human participation *See* Exhibit A.

93. Plaintiff has continuously and extensively used this trade dress in commerce since 2012.

94. Plaintiff has licensed her wings to dozens of films, television shows and media outlets including Hollywood Teen medium, Growing Up Top Model, Cobra Kai, I Want My Phone Back, BUZZFEED, Refinery 29, Orion Beer commercial (Japan), Invisalign M2M Wildness, Hop Skip Jump, GHOSTING, AHA Film and Committee for a Better LA, We are the Los Angeles Busy Tonight Show – Turbo Productions, Artist Spotlight LA BB&T (Saville Productions), IF ONLY, New Wave Entertainment–ZOO, Angels Friends photography license, Hangzou China, EYLA interior work space LA, LAMF "Summertime," Venus as a Boy, Full Bloom, Blue Orbit, To Tell The Truth, Random ACT of Magic, Street Art Stories, As the Cookie Crumbles, Sela Films The Program (untitled project, Wings on Macys DTLA), A&E Network Angel tv series, The Rookie (Arts District "Coop Wings", Ford Auto commercial, American Songs – Prospect Productions, EFT Media Evolution, Media Housewives, Abby List film – Hermosa Beach, Mullen Lowe Media Hub – El Segundo, NETFLIX Happy Place, Ndeska X Brent Faiyez interview, Light Switch –

film HARD SUMMER, International Love tv show, Delerium TV, Dress My Tour tv – Bright Roads Productions, New Remote Productions/Viacom CBS, Killer Queen Wine Bar wings mural – SCRIPPS Network LLC, Pie Town TV, Ohio Singles Project/Paramount/Delerium TV, Dena Strong, Alta Dena, Black Eyed Peas Video (Alta Dena Fire Relief), Airports: Heathrow London, LAX, O'Hare Chicago and Liberty Newark.

95. Plaintiff's trade dress is inherently distinctive and/or has acquired secondary meaning.

96. Plaintiff's trade dress is inherently distinctive because of their signature artistic style, interactive human-focused design and scale.

97. Alternatively, Plaintiff's trade dress has acquired secondary meaning through extensive, continuous, widespread use, promotion, and advertising.

98. Consumers, tourists, and the general public associate these painted wings with Plaintiff's identity and artistic services since the Project began in 2012, in fact the wings are included on TMZ's Hollywood tour and several documentaries made about Plaintiff and the Project.

99. Plaintiff's trade dress is primarily non-functional.

100. The elements of plaintiff's trade dress are not essential to the use or purpose of the product and do not affect the cost or quality of the product.

101. Defendant has used and continues to use trade dress that is confusingly similar to Plaintiff's trade dress.

102. Defendant began selling the Product bearing the confusingly similar trade dress on or about July 1, 2026 with the Infringing Reproductions.

103. Defendant continued the sale and advertisement of the Product bearing the confusingly similar trade dress through the use of the Sidewalk Advertisement, which linked to images of the Infringing Reproductions and was placed next to the Original Work.

104. Defendant's use of confusingly similar trade dress is likely to cause

confusion, mistake, or deception among consumers as to the source, sponsorship, or approval of Defendant's Product, as depicted hereinabove.

105. Plaintiff has received messages from the consuming public demonstrating actual confusion.

106. Defendant's actions constitute trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 USCS § 1125.

107. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer irreparable harm to her business, reputation, and goodwill.

108. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer monetary damages in an amount to be determined at trial.

109. Defendant's infringement has been willful, deliberate, and in bad faith.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff COLETTE MILLER respectfully requests that this Honorable Court enter judgment in Plaintiff's favor and against Defendant as follows:

a. Declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, that Defendant's creation of an unauthorized copy of the Original Work of Plaintiff, unauthorized duplication, public display, and distribution of the Infringing Reproductions, infringes the Plaintiff's copyright in the Original Work, in violation of the Copyright Act;

b. Granting a permanent injunction pursuant to 17 U.S.C. § 502, prohibiting Defendant from further infringement of the Plaintiff's copyrights, including further display of the Infringing Reproductions, the Sidewalk Advertisements and/or any other infringing images of the Original Work, including but not limited to promotional materials;

c. Awarding the Plaintiff the actual damages she has suffered in connection with damage to Plaintiff's reputation and the market for Plaintiff's works,

including the Original Work, and the profits directly and indirectly attributable to the Defendant from the infringement in the Infringing Reproductions and Sidewalk Advertisements;

d. A permanent injunction pursuant to 15 U.S.C. § 1116, enjoining and restraining Defendant and its officers, directors, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from using Plaintiff's trade dress or any trade dress that is confusingly similar to Plaintiff's trade dress;

e. An order directing Defendant to recall all products, packaging, and promotional materials bearing the infringing trade dress;

f. An award of Defendant's profits derived from their infringing activities pursuant to 15 U.S.C. § 1117;

g. An award of all damages sustained by Plaintiff as a result of Defendant's infringing activities pursuant to 15 U.S.C. § 1117;

h. An enhancement of the award of profits and/or damages pursuant to 15 U.S.C. § 1117, as the Court finds appropriate due to the willful nature of Defendant's infringement;

i. An award of Plaintiff's reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117; and

j. Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands trial by jury on all issues so triable.

DATED: September 25, 2026

Respectfully submitted,

**COLETTE MILLER**

*/s/ Heather L. Blaise*

HEATHER L. BLAISE, ESQ. (SBN 261619)

*Attorney for Plaintiff*